## S. W. TINNER V. ELI CROW ET AL.

No. 6248.   Decided January 23, 1935.
(78 S. W., 2d Series, 588.)

*J. Fred Rose,* of Whitney, for plaintiff in error.

On the proposition that the Act is unconstitutional. Altzelt v. Gutzeit, 109 Texas, 123, 201 S. W., 400; Kitchens v. Roberts, 24 S. W. (2d) 464; Henderson County v. Allred, 120 Texas, 483, 40 S. W. (2d) 17.

*Frazier & Averitte,* of Hillsboro, for defendants in error.

In support of the proposition that the Act is valid. Smith v. Grayson County, 44 S. W. 921; Westheimer Co. v. Piner, 263 S. W., 578; Vincent v. State, 235 S. W., 1084.

MR. JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

After careful examination of the record, the application for writ of error, the briefs, and the authorities, we have reached the conclusion that the Court of Civil Appeals correctly disposed of the case, for the reasons so well stated and the authorities cited in the opinion of that court written by Judge Alexander. (47 S. W. (2) 391.) That opinion, including its statement of the case, is therefore adopted as the opinion of the court. It is as follows:

"This is an appeal from an order of the trial court granting an injunction restraining the county commissioners of Hill County from approving and the county trasurer of said county from paying the accounts of said commissioners for expenses incurred by them in the operation of their own private automobiles while supervising the maintenance of roads in Hill county. The suit involves the constitutionality of section 8a, Special Laws, 1919, Second Called Session, page 16, chapter 7.

"At the regular session of the Thirty-Sixth Legislature, there was enacted house bill No. 500 (Acts, 1919, 36th Leg., p. 105, c. 33), being a special law providing for a more efficient road system of Hill county. Said act provided for the issuance of road bonds and for the general improvement of the road system of said county. It provided for the widening of old roads and the laying out and building of new ones. The county commissioners were made ex officio road commissioners of their precincts, and they were required by said act to assume the duties of superintending the laying out of new roads and the making and changing of roads and the building of bridges thereon. They were required to take charge of all tools, teams, and machinery belonging to the county and used in connection with such work. Section 8 of said act provided as follows: 'Sec. 8. Said commissioners' court shall have entire and exclusive charge, control, and management of all matters pertaining or relating to the laying out and constructing of the permanent roads of the county or of such political subdivision or defined district, for which the bond issue was voted. The words "road" or "roads" as used herein shall be taken to include and embrace all rights of way, roadbeds, ditches, drains, culverts, bridges and other accessories pertaining to, or in any way comprising, any part of said roads or highways being constructed under the provisions of this Act.'

"Thereafter at the Second Called Session of the same Legislature, the above act was amended by adding thereto section 8a, being the act in question, which reads as follows: 'Sec. 8a. That the members of said Commissioners' Court including the County Judge using automobiles in the performance of their duties set out in section 8 of said House Bill No. 500, are hereby allowed to use their own private automobiles, and all expenses incurred by them in such use of their private automobiles, namely, gasoline, cylinder and lubricating oil, inner tubes, casings, mechanical upkeep and vulcanizing, shall be allowed by said Commissioners' Court as a claim against the County, on being presented as a formal itemized account in

favor of the member of the commissioners court presenting such account verified in accordance with article 3712, Revised Statutes of 1911, and upon such claim being filed and approved, same shall be ordered paid by the Commissioners' Court, out of the Road and Bridge Fund and on such order being entered, the County Clerk shall draw a warrant on such fund payable to the member of the commissioners court in whose favor such claim has been approved and ordered paid, and which warrant on being presented to the County Treasurer, shall be by such Treasurer paid.'

"In compliance with said amendment, the county commissioners of said county used their own automobiles in the performance of their duty in supervising the roads of said county. They duly presented their accounts for expenses so incurred by them, and were preparing to approve said accounts and to order same paid when the trial court, upon the application of S. W. Tinner, a taxpayer, and, after a hearing on the merits, held said amendment unconstitutional and enjoined the payment of said accounts.

"Our Constitution provides that: 'The legislature shall not, except as otherwise provided in this constitution, pass any local or special laws * * * regulating the affairs of counties.' Const., Art. 3, Sec. 56.

"It further provides: 'The legislature may pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws.' Const., Art. 8, Sec. 9.

"The statute in question applies to Hill county only, and is therefore a local or special law. If the purpose of the above act was to regulate the affairs of the county, other than the maintenance of roads, it is unconstitutional. On the other hand, if its sole purpose was the 'maintenance of the public roads,' its enactment was within the power of the Legislature.

■ "We must first ascertain what is meant by maintenance of roads. It has been held that the phrase 'maintenance of public roads' is not restricted literally to the manual labor of repairing existing roads. The phrase has a broader meaning and includes the doing of everything necessarily and appropriately connected with and incidental to the laying out, opening, and the construction of public roads and the maintenance of an efficient road system. Austin Bros. v. Patton (Tex. Com. App.), 288 S. W., 182. In the case of Dallas County v. Plowman, 99 Texas, 509, 91 S. W., 221, 222, Chief Justice Brown said: 'Recognizing that differences existed and would exist in

the financial conditions, the character of the soil, and otherwise in the counties, which would make it necessary for the different counties to use different methods in maintaining public highways, the last clause of section 9 (of the Constitution) was added to authorize the Legislature to meet the varying needs of the counties by local laws. The thing to be accomplished by the local law is the same as by the general law, hence the local law must embrace the whole subject of public highways with additional powers, for it would be unreasonable, to suppose that there should be one law to govern in laying out and constructing roads which would apply to all counties, but many different laws to regulate only the repair of public roads. This question was before the Court of Civil Appeals at Dallas in the case of Smith v. Grayson County (18 Tex. Civ. App., 153), 44 S. W., 921, in which that court held that the word "maintenance" should be construed as authorizing the inauguration of a system of roads in the county. The application for writ of error was made to this court and refused. We conclude that the authority conferred upon the Legislature to "pass local laws for the maintenance of public roads," etc., authorizes that body to confer upon a county power to do everything to which the taxes raised for the purpose may be lawfully applied, and that the eleventh section of the local road law for Dallas county is valid.'

"Was the law enacted for the better maintenance of roads in Hill county? The Legislature by house bill No. 500 had placed new and additional burdens on the commissioners with reference to the roads of Hill county. The purpose was to secure a better system of roads for the county. It was apparent that the commissioners would incur extra expense in discharging these new duties. In return, the amendment in question undertook to compensate them out of the road and bridge fund for the expenses so incurred. The use by the commissioners of their private automobiles for the accomplishment of this purpose and in connection with such work clearly had to do with the 'maintenance of the public roads' of the county, and if so, the Legislature had the authority under the Constitution by a local law to authorize the use of a part of the road and bridge funds to accomplish this purpose. A careful supervision of the roads by the commissioners was as essential to the maintenance of the roads and the creation of an efficient system as would have been the supervision thereof by a civil engineer. If the commissioners were to assume and discharge these burdens, it was essential that they be provided with the means of doing so. This

could have been done either by providing the means of conveyance or by compensating the commissioners for the expenses incurred by them in doing so.

■ "It is true that the building and maintenance of roads is a part of the affairs of a county and that a special law regulating the maintenance of roads is to a certain extent a law regulating the affairs of the county; but, if such special law undertakes to regulate only that part of the affairs of a county pertaining to the maintenance of roads, it is not prohibited by the Constitution. Chief Justice Phillips in Altgelt v. Gutzeit, 109 Texas, 123, 201 S. W., 400, 401, said: 'No doubt the Legislature, in the passage of local road laws, may, within proper bounds, provide compensation for extra services to be performed by those officials (the commissioners) where uncontrolled by general laws and required by such local laws and directly connected with the maintenance of the public roads.'

■ "Whether or not the enactment of such a law was wise or unwise was for the Legislature to determine. As stated before, the Legislature had provided for the voting of bonds for the building of a new road system in Hill county. If, at the time the act in question was enacted, said county had entered upon a program for the building of such roads on a large scale, the supervision of such work entailed extra labor and expense on the commissioners, and furnished sufficient justification to the Legislature to enact a special law to meet the peculiar conditions brought about thereby, as was suggested in Dallas County v. Plowman, 99 Texas, 509, 91 S. W., 221, 222. Whether the conditions which induced the Legislature to pass the act in question have now been removed, it is not for the courts to say. If the appellee feels that there was never any need for such a law, or that the conditions which induced the Legislature to enact same no longer exist, his remedy is with the Legislature and not with the courts. In our opinion, the act in question had for its sole purpose the better maintenance of the roads in Hill county, and was therefore authorized by the Constitution.

"The judgment of the trial court is reversed, and judgment here rendered dissolving and denying the injunction."

The writ of error was granted under the belief that the decision of the Court of Civil Appeals conflicts with Austin Brothers v. Patton et al. (Com. App.), 288 S. W., 182, and Kitchens et al. v. Roberts, County Treasurer, 24 S. W. (2d) 464. The further examination of those two decisions convinces us that there is no conflict.

■ The special road law under attack in Austin Brothers v. Patton was held to be in violation of Section 56 of Article III of the Constitution, and not within the exception created by Section 9 of Article VIII, because it provided for a subtraction of powers from county commissioners and the commissioners court conferred by general law, because it worked a change in the financial system of the county as fixed by general law, and because it created offices and clothed the new officers with functions already performed by existing officers as provided by general laws. It was held that none of such things was "incidental or necessary to the maintenance, laying out, opening and construction of roads." The law under attack in this case has none of the vices found to exist in the law held to be invalid in that case. It merely provides for payment to the members of the commissioners court of expenses incurred in the performance of their duties of controlling and managing matters pertaining to the laying out and construction of permanent roads of the county.

In the case of Kitchens v. Roberts, County Treasurer, a special road law of Wood County was held to be invalid as an attempt by special or local law to regulate the affairs of the county, because the law fixed the compensation of the commissioners, not only for services required of them in connection with roads, but also for all services of whatever character performed by them as commissioners, and thus was an attempt "to legislate upon the subject of their general compensation or to alter the general laws governing it." The law here involved does not fix or allow compensation, and it does not relate to services of the commissioners not having to do with roads. It merely authorizes the county to pay expenses actually incurred by the members of the commissioners·court in the performance of certain of their duties with respect to permanent roads. We are cited to no general law and find none regulating the payment of such expenses.

It is deemed advisable to call attention to the fact that Section 8a of the Act approved July 11, 1919, does not authorize the payment by the county of expenses incurred by the members of the commissioners court in using their automobiles in the performance of all of their duties with respect to the roads in the county. Section 8a expressly provides that the expenses enumerated may be paid when the private automobiles are used in the performance of the duties set out in Section 8 of House Bill No. 500, (the Act approved March 4, 1919). Section 8 gives the commissioners court "charge, control and manage-

ment of all matters pertaining or relating to the *laying out and constructing* of the *permanent roads* of the county or of such political subdivision or defined district, *for which the bond issue was voted."* (Italics ours.) Thus the items of expense enumerated in Section 8a may be paid by the county only when the expenses are incurred in the performance of duties in connection with the laying out and constructing of roads and not when they are incurred in supervising or maintaining roads already constructed. Furthermore, claims for such expenses cannot be paid unless the expenses are incurred in the performance of services with respect to permanent roads for which bonds have been voted.

We do not intend to intimate that the claims, the payment of which is sought to be enjoined in this case, were for expenses not authorized to be paid by the special law. There are no such allegations in the petition, and in the statement of facts there is an agreement to the effect that the expenses were incurred by the commissioners "in the performance of their official duties for those things mentioned in the special act involved in this suit, and that these expenses were made under and by virtue of that act and in accordance with it."

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court January 23, 1935.