Webster and another, Appellants, vs. Frawley and others, Respondents.*

*October 8—November 5, 1952.*

* Motion for rehearing denied, without costs, on January 6, 1953.

For the appellants there was a brief by *Doar & Knowles* of New Richmond, and *John D. Heywood* of Hudson, and oral argument by *Warren P. Knowles III.*

For the respondents there was a brief by the *Attorney General* and *Richard E. Barrett,* assistant attorney general, and *Lawrence P. Gherty,* district attorney, attorneys for the St. Croix County Highway Committee, and *Darrell O. Hibbard* of Eau Claire, attorney for L. G. Arnold, Inc., and oral argument by *Mr. Gherty* and *Mr. Barrett.*

FAIRCHILD, J. This court has no hesitancy in holding that the taking of the plaintiff Webster's lands for a state truck-weighing station and its approaches constitutes a taking for a public purpose. This leaves as the only question to be determined on this appeal that of whether the state highway commission had the right to utilize the summary method of condemnation procedure authorized by secs. 84.09 and 83.08, Stats. 1949, to acquire the lands for the weighing station, or whether it was limited to the use of the condemnation method set forth in ch. 32, Stats.

The statutes hereinafter referred to are those of 1949. Sec. 84.09 (1), Stats., states:

"The state highway commission may acquire by gift, devise, purchase, or condemnation any lands for establishing,

laying out, widening, enlarging, extending, constructing, reconstructing, improving, and *maintaining highways,* streets, and roadside parks which it is empowered to improve or maintain, or interests in lands in and about and along and leading to any or all of the same; . . ." (Emphasis supplied.)

Sec. 84.09 (2), Stats., provides that if the lands cannot be purchased expeditiously for a reasonable price, the commission may acquire the same by condemnation under ch. 32, Stats., in the manner provided for counties in sec. 83.07 or may make an award of damages to the owner.

As an alternative method, sec. 84.09 (3) (a), Stats., provides that the commission may order all or certain parts of the required land or interests therein to be acquired by the county highway committee. If the lands cannot be purchased expeditiously within a price appraised and agreed upon by the county highway committee and the state highway commission, the county highway committee may acquire them by condemnation under ch. 32, Stats., or in the manner provided in sec. 83.07 or subject to the approval of the commission in the manner provided in sec. 83.08 (2). Sec. 83.08 (2) provides as one of the methods available the making and signing of an award of damages to an owner and the filing of same with a county clerk. When the award has been filed, the county highway authorities and their contractors and employees may take possession of the lands and exercise full control of the interest in the lands acquired. There are further provisions in this section which provide for notification to the owner, payment of the amount awarded, and the granting to the owner of a two-year period within which he may take an appeal to commissioners under ch. 32 or to the county judge. In either case, the statutes grant to the property owner the ultimate right to have his damages determined by jury trial.

Lands acquired by the county highway committee for the state highway commission must be conveyed to the state without charge by the county highway committee and the county clerk in the name of the county, when so ordered by the commission. Sec. 84.09 (3) (b), Stats.

The defendants maintain that the enforcement of the weight restrictions on trucks by means of erecting weighing stations is a method of "maintaining" the highways of the state, and therefore the acquisition of land for weighing-station purposes comes within sec. 84.09 (1), Stats.

It is our conclusion, however, that the words "maintaining highways" employed in sec. 84.09 (1), Stats., have reference to activities relating to the actual physical maintenance of highways and not to activities which only remotely and indirectly affect highway maintenance, such as the policing of weight of trucks.

This conclusion is strengthened by the provisions of sec. 84.07 (1), Stats., which provides that:

". . . Maintenance of state trunk highways includes the operations, activities, and continuing processes for their repair, preservation, restoration, and reinforcement, the removal and control of snow and the removal, treatment, and sanding of ice, and all measures deemed necessary to provide adequate traffic service. It also includes the care and protection of trees and other roadside vegetation and suitable planting to prevent soil erosion or to beautify highways pursuant to sec. 80.01 (3)."

It is apparent from a careful reading of this section that the term "maintenance" embraces only various types of work on the highway for the purpose of keeping the highway in repair. It does not include the enforcement of police regulations, such as weight restrictions on trucks. This fact is made doubly clear by the third sentence of sec. 84.07 (1), Stats., which provides:

". . . The commission may arrange with any county highway committee to have *all* or certain parts of the work of maintaining the state trunk highways within its county performed by the county." (Emphasis supplied.)

In other words, all maintenance activities could be performed by the county highway committee under arrangements with the state highway commission. Certainly, the enforcement of truck-weight restrictions could not properly be left to the county, and for that reason the enforcement of such restrictions cannot be classified as highway maintenance as that word is used in the statute.

The enforcement of weight restrictions has always been the obligation of state agencies other than the highway commission. At the present time the enforcement of weight restrictions is vested in the motor vehicle department.

In view of the conclusion reached by the court that the statutes under which the defendants acted to condemn the plaintiff Webster's lands did not authorize the taking of such lands for a state truck-weighing station, it was error for the trial court not to have entered judgment declaring that the condemnation proceedings undertaken by the defendants were null and void and permanently restraining the defendants from entering upon the lands of plaintiff Webster pursuant to any authority claimed under such condemnation proceedings.

*By the Court.*—Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.

FRITZ, C. J. (*dissenting*). Plaintiff contends that the St. Croix county highway committee had no authority to acquire a sufficient part of plaintiff's land along a state highway for the purpose of constructing a necessary truck-weighing station and access driveway. Ch. 83, Stats. 1949, authorizes

and prescribes means and methods for the acquisition of lands or interests therein by the state for highway purposes; to wit,

"If any of the needed lands or interests therein cannot be purchased expeditiously for a reasonable price, the committee may acquire the same either by condemnation under chapter 32 or section 83.07, or may make and sign an award of damages to the owner and file the same with the county clerk; . . ." (Sec. 83.08 (2), Stats.)

In February, 1951, the state highway commission ordered the St. Croix county highway committee to acquire the additional land necessary for the construction by the state of said highway truck-weighing station, and necessary driveways, on said parcel of land, parallel to the state highway. The county highway committee was unsuccessful in acquiring said lands by purchase from Webster, and thereupon an award of damages was duly made and approved by the state highway commission on March 28, 1951. On April 4, 1951, the award was filed in the office of the county clerk and the register of deeds, as prescribed by the statutes. In September, 1951, L. G. Arnold, Inc., employed by the St. Croix county highway committee, entered upon the land in question for the purpose of constructing the highway weighing station and driveway for the state; and plaintiff thereupon commenced this action to enjoin the construction thereof. Upon the trial of the action, the court dismissed plaintiff's complaint; and judgment was entered accordingly. Plaintiff appealed from the judgment.

Sec. 85.45 (1), Stats. 1949, provides:

"The maximum limitations on width, length, height, and weight of vehicles, imposed in this chapter, shall apply to the vehicle and load. It shall be unlawful for any person to operate or move or for the owner to cause or permit to be operated or moved on any highway any vehicle of a size or weight so loaded that the combination of vehicle and load

shall exceed the limitations stated in this chapter or any vehicle which is not constructed or equipped as required by this chapter or by the rules and regulations adopted pursuant thereto; and the maximum size and weight of vehicles specified in this chapter shall be lawful throughout this state, and local authorities shall have no power or authority to alter said limitations except as express authority may be granted in this chapter."

Sec. 85.47 (1), Stats. 1949, provides:

"Except as provided in subsection (3), no vehicle or combination of vehicles shall be operated upon Class 'A' highways of this state with gross weights exceeding the following limitations: The gross weight on any axle shall not exceed 19,000 pounds. The gross weight on any two or more axles shall not exceed 26,000 pounds plus 1,000 pounds for each foot of distance measured longitudinally to the nearest foot between the foremost and rearmost of the axles under consideration. An axle as used in this section is defined as comprising all wheels the centers of which may be included between two parallel transverse vertical planes forty inches apart." (See also secs. 85.48 and 85.57, Stats.)

Likewise in relation to the state trunk highway system, sec. 84.07 (1), Stats. 1949, provides:

"The state trunk highway system shall be maintained by the state at state expense. The commission shall prescribe regulations and specifications for such maintenance. . . . Maintenance of state trunk highways includes the operations, activities, and continuing processes for their repair, preservation, restoration, and reinforcement, the removal and control of snow, and the removal, treatment, and sanding of ice, and all measures deemed necessary to provide adequate traffic service. . . ."

Plaintiff contends that the term "maintenance" embraces only various types of work on the highway for the purpose of keeping the highway in repair. That contention is erroneous. Sec. 84.07 (1), Stats., clearly provides for such "maintenance" of state trunk highways. There are included "all

the operations, activities, and continuing processes . . . and all measures deemed necessary to provide adequate traffic service." The language used in enumerating them is very broad, and concludes with the phrase, "and all measures deemed necessary to provide adequate traffic service."

Manifestly, the enforcement of weight restrictions by means of providing weighing stations is an absolutely necessary method of maintaining the highways "to provide adequate traffic service;" and therefore the acquisition of lands for that purpose is within the scope, not only of sec. 84.07, Stats., but also the provisions in secs. 84.09 (2) ; 84.09 (3) (a) ; and secs. 85.45 and 85.47, for the maintaining state highways.

In *Crow v. Tinner* (Tex. C. C. A.), 47 S. W. (2d) 391, 392, the court stated:

"It has been held that the phrase 'maintenance of public roads' is not restricted literally to the manual labor of repairing existing roads. The phrase has a broader meaning and includes the doing of everything necessary and appropriately connected with and incidental to the laying out, opening, and the construction of public roads and the maintenance of an efficient road system. . . . We conclude that the authority conferred upon the legislature to 'pass local laws for the maintenance of public roads,' etc., authorizes that body to confer upon a county power to do everything to which the taxes raised for the purpose may be lawfully applied and that the eleventh section of the local road law for Dallas county is valid."

Likewise in *Huffman v. State Roads Comm.* 152 Md. 566, 581, 137 Atl. 358, the court said:

". . . the word 'maintain,' as it is used in the state road legislation, does not refer to time but to condition. It may mean, and as was there used was evidently intended to mean, to keep up, to preserve, to bear the cost of, to keep unimpaired, to keep in good order."

To the same effect see *Ferguson v. Rochford,* 84 Conn. 202, 204, 79 Atl. 177; *Electric Service Co. v. Mullinville,* 125 Kan. 70, 262 Pac. 536; *Quinn v. Johnson* (Tex. C. C. A.), 91 S. W. (2d) 499; and *Plimpton v. New York, N. H. & H. R. Co.* 221 Mass. 548, 109 N. E. 732.

Sec. 84.09 (1), Stats. 1949, provides:

"The state highway commission may acquire by gift, devise, purchase, or condemnation any lands for establishing, laying out, widening, enlarging, extending, constructing, reconstructing, improving, and maintaining highways, streets, and roadside parks, which it is empowered to improve or maintain, or interests in lands in and about and along and leading to any or all of the same; . . . Whenever the commission deems it necessary to acquire any such lands or interests therein for any of such purposes, it shall so order, . . . and shall file a copy of the order and map with the county clerk and county highway committee of each county in which such lands or interests are required, . . ."

And sec. 84.09 (3) (a), Stats. 1949, provides:

"The commission may order that all or certain parts of the required land or interests therein shall be acquired by the county highway committee. When so ordered, the committee and the commission shall appraise and agree on the maximum price, including damages, considered reasonable for the lands or interests to be so acquired. The committee shall endeavor to obtain easements or title in fee simple by conveyance of the lands or interests required, as directed in the commission's order. . . . If the needed lands or interests therein cannot be purchased expeditiously within the appraised price, the county highway committee may acquire them by condemnation under chapter 32, or in the manner provided in section 83.07 or, subject to approval by the commission, in the manner provided in section 83.08 (2)."

Although there is no express provision in sec. 84.09, Stats., which authorizes specifically the taking of private property for the purpose of constructing roadside weighing stations,

the provisions in secs. 84.09 (1) and 84.07 (1) certainly authorize the state highway commission and the county highway committee to acquire such lands for the purposes therein stated; and in the manner expressly authorized and provided by said statutes. These provisions provide that the commission shall prescribe regulations and specifications for the maintenance of state trunk highways, by the operations, activities, and continuing processes, for the repair, preservation, restoration, reinforcement thereof, and all measures deemed necessary to provide adequate traffic service.

The enforcement of statutory weight restrictions on state trunk highways by means of constructing the intended weighing station, is one of the necessary methods and means of maintaining the highway; and therefore the acquisition of the necessary lands by the state for the weighing-station purposes is clearly within the provisions of sec. 84.09 (1), Stats. If the necessary land cannot be acquired expeditiously for the purpose intended by the state highway commission, and the county highway committee, for a reasonable price, appraised and agreed upon by the county highway committee and the state highway commission, the county highway committee may acquire the land, subject to the approval of the state highway commission in the manner provided in sec. 83.08 (2) or as provided for counties in sec. 83.07; or by condemnation under ch. 32, Stats.

Mr. Justice MARTIN concurs in the dissent.