994 A.2d 411

WASHINGTON SUBURBAN SANITARY COMMISSION

v.

Shaaron PHILLIPS, et al.

James K. Sillers

v.

Washington Suburban Sanitary Commission.

Allen W. Cartwright, Jr.

v.

Washington Suburban Sanitary Commission.

Nos. 85, Sept. Term, 2009, 154, Sept. Term, 2008.

Court of Appeals of Maryland.

Argued June 5, 2009.

Reargued Feb. 5, 2010.

Decided May 10, 2010.

**608**

Timothy F. Maloney (Brian J. Markovitz, Joseph M. Creed, and Koushik Bhattacharya of Joseph, Greenwald & Laake, P.A., Greenbelt), on brief, for appellants in No. 154 Sept. Term, 2008.

Russel L. Beers (Washington Suburban Sanitary Commission of Laurel), on brief, for appellee in No. 154 Sept. Term, 2008 and for petitioner in No. 85 Sept. Term, 2009.

M. Celeste Bruce (Ellen B. Flynn of Rifkin, Livingston, Levitan, and Silver, LLC, Greenbelt), on brief, for respondent in No. 85 Sept. Term, 2009.

Argued and reargued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, J.

The three appeals presently before the Court were argued (and are decided) together because of a single legal question they share: whether the Washington Suburban Sanitary Commission (hereinafter, "WSSC" or "the Commission") qualifies as a "person" under Maryland Code, Article 49B,[1] § 42(a)[2]

---

**1.** All statutory references contained herein refer to Maryland Code, Article 49B, unless otherwise noted.

**2.** At the time the present actions commenced, § 42, entitled "Civil actions for discriminatory acts—Montgomery County, Prince George's County, and Howard County," subsection (a), provided:

> Authorized.—In Montgomery County, Prince George's County, and Howard County, in accordance with this subtitle, a person who is subjected to an act of discrimination prohibited by the county code may bring and maintain a civil action against the person who committed the alleged discriminatory act for damages, injunctive relief, or other civil relief.

Md.Code, Art. 49B, § 42(a) (1957, 2003 Repl. Vol.).

In 2009, § 42 was recodified, without substantive changes, as subsections (a) and (b) of § 20–1202 of the State Government Article, entitled "Howard, Montgomery, and Prince George's Counties." Those subsections currently provide:

> (a) Scope of section.—This section applies only in Howard County, Montgomery County, and Prince George's County.

(hereinafter, § 42(a)), and, therefore, is subject to actions for employment discrimination brought by its employees or ex-employees for violations of anti-discrimination ordinances enacted by Prince George's County. In each case, a former employee of WSSC brought an action in the Circuit Court for Prince George's County against the Commission, pursuant to § 42(a), alleging that WSSC engaged in race-based employment discrimination in violation of Prince George's County Code ("PGCC") §§ 2–186[3] and 2–222.[4] In response, WSSC maintained that, because it is a State agency or instrumentality, it is not considered a "person" for purposes of § 42(a) and, as such, may not be sued for employment discrimination

---

(b) Civil action authorized.—In accordance with this section, a person that is subjected to a discriminatory act prohibited by the county code may bring and maintain a civil action against the person that committed the alleged discriminatory act for damages, injunctive relief, or other civil relief.

Md.Code, State Gov't Art., § 20–1202(a)–(b) (1984, 2009 Repl. Vol.). Because § 42(a) was in effect at the time the present actions were commenced, throughout this opinion we shall refer to § 42(a) as the governing statute, rather than § 20–1202 of the State Government Article.

3. PGCC § 2–186, entitled "Definitions," provides in pertinent part:
(a) As used in this Division:

 * * * * * *

(3) Discrimination shall mean acting, or failing to act, or unduly delaying any action regarding any person because of race, religion, color, sex, national origin, age (except as required by State or federal law), occupation, familial status, marital status, political opinion, personal appearance, sexual orientation, or physical or mental handicap, in such a way that such person is adversely affected in the areas of housing and residential real estate, employment, law enforcement, education, financial lending, public accommodations, or commercial real estate.

 * * * * * *

PGCC § 2–186 (2003 ed.).

4. PGCC § 2–222, entitled "Discrimination in employment prohibited," provides:

No employer in the County shall discharge or refuse to hire any person, or act against any person with respect to compensation or other terms and conditions of employment, or limit, segregate, classify, or assign employees because of discrimination.

PGCC § 2–222.

pursuant to that section. For reasons we shall explain, we hold that, for purposes of § 42(a), WSSC is a "person," and, therefore, may be sued for employment discrimination under § 42(a) for violations of the anti-discrimination provisions of the Prince George's County Code.

## FACTS

Because the question with which we are confronted in these cases is purely a legal one, we set forth only briefly sufficient factual backgrounds underlying each action to give context.

### Shaaron Phillips

In 2003, Shaaron Phillips, an African–American female who served as leader of WSSC's Small, Local, and Minority Business Enterprise Group, approached her general manager "to discuss harassment and racial discrimination she was experiencing at WSSC." After she was unable to have her concerns resolved satisfactorily, Phillips filed, on 16 June 2003, complaints with the Equal Employment Opportunity Commission ("EEOC"), the Maryland Commission on Human Rights, and the Prince George's County Human Rights Commission. The complaints identified a number of Caucasian WSSC employees who held similar positions to Phillips, but who received higher pay than she did.

After the EEOC denied her claims, Phillips[5] filed in the Circuit Court for Prince George's County, on 22 June 2004, a civil action against WSSC alleging various claims of unlawful retaliation and pay discrimination based on race and national origin. Of note to the present appeal, Phillips's complaint charged WSSC with engaging in discriminatory retaliation in violation of § 42(a) and PGCC §§ 2–186 and 2–222 by failing to give Phillips a performance evaluation, and attendant merit pay increase in 2003.[6] In response, WSSC filed a motion to

---

5. Phillips filed the complaint along with six other African–American employees of WSSC. Only Phillips remains a party to the present appeal.

6. Phillips's § 42(a) claim is the only claim asserted in her complaint that is presently before this Court.

dismiss Phillips's complaint, contending, among other things, that the claim asserted by Phillips pursuant to § 42(a) and PGCC §§ 2–186 and 2–222 could not be maintained because the General Assembly's use of the term "person" in § 42(a) demonstrated its intent that § 42(a) not apply to State agencies, a club to which, WSSC argued, it belonged. Pursuant to Maryland Rule 2–322(c), the trial court converted WSSC's motion to dismiss into a motion for summary judgment. On 18 January 2005, in a written order and opinion, the trial court denied WSSC's motion for summary judgment, holding that, although WSSC was a State agency, it nevertheless qualified as a "person" under § 42(a), subject to actions for employment discrimination brought pursuant to § 42(a) for violations of PGCC §§ 2–186 and 2–222.

While the retaliation-grounded suit was pending in the Circuit Court, on 31 January 2005, Phillips's employment was terminated by WSSC.[7] Phillips challenged her termination in an administrative proceeding, but the Administrative Law Judge ("ALJ") of the Maryland Office of Administrative Hearings presiding over the appeal found that WSSC's termination of Phillips was justified and denied Phillips relief. Phillips appealed the ALJ's ruling to the Circuit Court, which affirmed the administrative decision. Upon further appeal, the Court

---

**7.** According to WSSC, Phillips's termination was based on her involvement in the development of proposed state legislation that would elevate her position as group leader to the higher-level and more highly compensated status of team chief. In its narrative description of the reasons underlying its decision to release Phillips, WSSC alleged that Phillips, without giving notice to or obtaining approval from her supervisors, possessed knowledge of and provided considerable input into the proposed legislation through direct contact with the legislation's sponsors and drafters in Annapolis prior to its introduction. WSSC maintained further that, during a meeting between the proposed legislation's sponsors and members of WSSC's Senior Leadership Team, Phillips advocated a position, namely, supporting the proposed legislation without amendment, contrary to the position taken by WSSC's Interim General Manager. Phillips contends that she was terminated based in part on her cooperation with the Washington Post on an article, published the day prior to her termination, which described Phillips's retaliation lawsuit against WSSC.

of Special Appeals upheld the ALJ's ruling that WSSC's termination of Phillips was justified.

Following the administrative proceedings and subsequent appeals process arising from her termination, Phillips amended her existing retaliation complaint to include claims for unlawful termination, in violation of § 42(a) and the Prince George's County Code, and common law wrongful discharge. Upon WSSC's motion, the termination-based causes of action were dismissed by the Circuit Court prior to trial on the grounds that, because the ALJ ruled that WSSC had lawful cause to terminate Phillips, the doctrine of res judicata barred any further termination-based claims asserted by Phillips. As such, only Phillips's retaliation-based claim remained. After a nine-day trial on that claim in December 2006, the jury returned a verdict of $16,433.16 in favor of Phillips, finding that WSSC engaged in discriminatory retaliation in violation of § 42(a) and PGCC § § 2–186 and 2–222. In addition, the trial court awarded Phillips attorneys' fees and costs in the amount of $60,242.50.

Phillips appealed timely the trial court's dismissal of her termination-based claims to the Court of Special Appeals. WSSC cross-appealed, arguing that § 42(a) does not apply against State agencies and instrumentalities such as WSSC, and, therefore, the trial court erred in denying its motion for summary judgment on Phillips's claim for retaliation premised upon § 42(a).

In its 19 March 2009 unreported opinion, the Court of Special Appeals affirmed the trial court's ruling on Phillips's termination-based claims, finding that the ALJ's decision established that there were non-discriminatory reasons for Phillips's termination and that the reasons accepted by the ALJ were supported by the evidence. Therefore, the court held, WSSC was entitled to summary judgment on Phillips's termination-based claims.[8] Regarding WSSC's cross-appeal, the

---

8. Phillips has not sought review of the Court of Special Appeals's decision.

intermediate appellate court again affirmed the Circuit Court, holding that, based on its view of the statutory scheme of Article 49B as a whole and WSSC's nature as a "unique," albeit a State, agency, the General Assembly intended for § 42(a) to apply to WSSC as a "person."

On 19 May 2009, WSSC filed with this Court a petition for writ of certiorari, which, on 21 August 2009, we granted, 410 Md. 165, 978 A.2d 245 (2009). In our grant of certiorari, we directed, in coordination with the related cases then pending before us (and decided in this opinion), that Phillips and WSSC address the following three questions:

(1) Whether the term "person," as it is used in Md.Code, Article 49B, § 42, includes the State of Maryland?

(2) If so, is the WSSC an agency or instrumentality of the State for those purposes?

(3) If not, is the WSSC a unique entity that should be considered a "person," within the meaning of Md.Code, Art. 49B, § 42, even if the State, in general, is not included within the meaning of that term?

*James K. Sillers*

James K. Sillers, a Caucasian male, was employed by WSSC from 1975 until 2007. Sillers rose through the ranks of the Commission staff, starting as a general laborer and ultimately becoming Group Leader for Wastewater Collections Systems.

According to Sillers, on or around 27 March 2006, he was demoted from his position as Group Leader for Wastewater Collections Systems to a new position as a Program Administrator. In response, Sillers filed a complaint with the EEOC alleging that his demotion was the result of "enormous pressure ... to have white employees removed from management positions and replaced with minorities." Sillers elaborated that "WSSC has altered its racial demographics and intentionally forced or encouraged numerous white employees to retire or resign, replacing them with minority employees." On 13 March 2007, the EEOC determined that there was reasonable cause to believe that WSSC had engaged in race-based dis-

crimination against Sillers and, on 20 August 2007, issued Sillers a right to sue letter. Subsequent to the EEOC's issuance of the right to sue letter, Sillers retired from the WSSC because, according to him, "his working conditions and work environment had become intolerable."

Following his retirement from WSSC, Sillers filed suit against the Commission in the Circuit Court for Prince George's County, basing his claim upon violations of § 42(a) and PGCC §§ 2–186 and 2–222. In response, WSSC moved to dismiss Sillers's complaint, asserting the same grounds for dismissal as in *Phillips,* namely, that the term "person" as it is used in § 42(a) does not include State agencies, such as WSSC. In addition, WSSC contended that PGCC §§ 2–186 and 2–222, if applied to the Commission through § 42(a), constitute unconstitutional public general laws with improper extra-territorial effect because, if a judgment in Prince George's County were to be rendered against it, WSSC has the statutory authority to satisfy the judgment by levying taxes upon citizens of Montgomery County. Agreeing with WSSC, the Circuit Court dismissed Sillers's complaint.

Sillers noted timely an appeal to the Court of Special Appeals. On 19 December 2008, while the appeal was pending in that court, we issued a writ of certiorari, on our initiative, 406 Md. 744, 962 A.2d 371 (2008), to consider the issue framed by Sillers, namely, "[w]hether or not the Circuit Court erred in holding that the Washington Suburban Sanitary Commission, which is a State agency, is not subject to civil action under Md.Code, Art. 49B, § 42." Subsequent to oral argument on 5 June 2009, we ordered the parties to rebrief and reargue the case based on the three issues which we ordered the parties in *Phillips* to address, noted *supra.*

*Allen W. Cartwright, Jr.*

Allen W. Cartwright, Jr., an African–American male, was an employee of WSSC for more than six years. Beginning in February 2004, Cartwright served as Chief of Customer Care, a position responsible for overseeing WSSC's Infrastructure Maintenance and Customer Service Departments.

According to Cartwright, in September 2005, a supervisor asked him to transfer back to being Chief of Mission Support, a position he occupied earlier in his career at WSSC, because the General Manager of WSSC "did not want African–Americans in management positions." Following his refusal to accept the demotion, Cartwright was terminated from WSSC on 3 October 2005.

In response to his termination, on 6 September 2006, Cartwright filed, in the Circuit Court for Prince George's County, a complaint against WSSC premised upon violations of § 42(a) and PGCC §§ 2–186 and 2–222. WSSC filed a motion to dismiss and a motion for summary judgment on substantially the same grounds as those asserted in its motions to dismiss Sillers's complaint and for summary judgment on Phillips's retaliation complaint, namely, that § 42(a) did not apply to WSSC because WSSC is a State agency and not a "person." After initially denying WSSC's motions to dismiss and for summary judgment, the Circuit Court granted WSSC's motion for reconsideration of the court's denial of summary judgment. Upon reconsideration, the Circuit Court, on 16 July 2008, granted WSSC's motion for summary judgment, agreeing with WSSC's premise that "WSSC is not a person under the provisions of Article 49B § 42." In the alternative, the court held that any interpretation of § 42(a) to include WSSC would imbue the underlying County Code provisions with improper extraterritorial impact, rendering them unconstitutional general laws.

Cartwright noted timely an appeal to the Court of Special Appeals. While the appeal was pending in that court, we issued a writ of certiorari, on our initiative, 406 Md. 744, 962 A.2d 371 (2008), in order to consider whether the use of the term "person" in § 42(a) includes State agencies, such as WSSC. Because Sillers's and Cartwright's appeals presented the same legal question, we consolidated them for argument upon motion of the parties. As noted *supra*, following initial oral argument, we ordered the parties to rebrief and reargue the appeal to address the three questions we directed be addressed in *Phillips*.

## STANDARDS OF REVIEW

 "[W]here an order involves an interpretation and application of Maryland constitutional, statutory or case law, our Court must determine whether the trial court's conclusions are 'legally correct'...." *Schisler v. State*, 394 Md. 519, 535, 907 A.2d 175, 184 (2006). With regard to the motion to dismiss entered by the Circuit Court in *Sillers*, the standard of review is well settled: " '[B]ecause we must deem the facts to be true, our task is confined to determining whether the trial court was legally correct in its decision to dismiss.' " *McDaniel v. Am. Honda Fin. Corp.*, 400 Md. 75, 83, 926 A.2d 757, 762 (2007) (quoting *Debbas v. Nelson*, 389 Md. 364, 372, 885 A.2d 802, 807 (2005)); *Fioretti v. Md. State Bd. of Dental Exam'rs*, 351 Md. 66, 71–72, 716 A.2d 258, 261 (1998). Similarly, with regard to the relevant summary judgments entered by the Circuit Court in *Phillips* and *Cartwright*, the standard of review is also clear: "The trial court properly grants summary judgment ... 'if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.' " *Tyma v. Montgomery County*, 369 Md. 497, 503–04, 801 A.2d 148, 152 (2002) (quoting *Jones v. Mid–Atlantic Funding Co.*, 362 Md. 661, 675–76, 766 A.2d 617, 624–25 (2001)). Thus, in each of the appeals presently before the Court, "our sole task is to determine whether the trial court was legally correct." *Murphy v. Merzbacher*, 346 Md. 525, 530–31, 697 A.2d 861, 864 (1997).

## PERTINENT PRINCIPLES OF SOUND STATUTORY INTERPRETATION

In *Lockshin v. Semsker*, 412 Md. 257, 987 A.2d 18 (2010), we recently outlined the well-established canons governing the process of sound statutory interpretation, stating:

> The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be

accomplished, or the evils to be remedied by the statutory provision under scrutiny.

To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the language of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with "forced or subtle interpretations" that limit or extend its application.

We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.

Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose, and the relative rationality and legal effect of various competing constructions.

In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense.

*Lockshin,* 412 Md. at 274–78, 987 A.2d at 28–29 (internal citations omitted).

■ In addition to these canons, it is a basic and long-standing principle of sound statutory interpretation that the State is not deemed to be bound by an enactment of the General Assembly unless the enactment specifically names the State or manifests a clear and indisputable intention that the State is to be bound. *Floyd v. Mayor and City Council of Balt.,* 407 Md. 461, 488, 966 A.2d 900, 916 (2009); *Atlantic Golf, Ltd. P'ship v. Md. Econ. Dev. Corp.,* 377 Md. 115, 126–27, 832 A.2d 207, 214 (2003); *Glascock v. Balt. County,* 321 Md. 118, 121, 581 A.2d 822, 824 (1990); *Nationwide Mut. Ins. Co. v. U.S. Fid. & Guar. Co.,* 314 Md. 131, 137, 550 A.2d 69, 72 (1988); *Mayor and City Council of Balt. v. State,* 281 Md. 217, 223, 378 A.2d 1326, 1329 (1977).

■ Supplementing the foregoing for present purposes, remedial statutes are to be construed liberally in favor of claimants "to suppress the evil and advance the remedy." *Haas v. Lockheed Martin Corp.,* 396 Md. 469, 495, 914 A.2d 735, 750–51 (2007); *Montgomery County Bd. of Educ. v. Horace Mann Ins. Co.,* 383 Md. 527, 544, 860 A.2d 909, 919 (2004); *Marsheck v. Bd. of Trs. of the Fire & Police Employees' Ret. Sys.,* 358 Md. 393, 403, 749 A.2d 774, 779 (2000); *Coburn v. Coburn,* 342 Md. 244, 256, 674 A.2d 951, 957 (1996); *Harrison v. John F. Pilli & Sons, Inc.,* 321 Md. 336, 341, 582 A.2d 1231, 1234 (1990).

■ Finally, a construction of a provision which casts doubt on its constitutionality should be avoided. *Harryman v. State,* 359 Md. 492, 509, 754 A.2d 1018, 1028 (2000); *Bd. of Educ. v. Prince George's County Educators' Ass'n, Inc.,* 309 Md. 85, 97, 522 A.2d 931, 937 (1987).

## THE PARTIES' GENERAL CONTENTIONS

Section 42(a) creates a civil, private cause of action for persons subjected to acts of discrimination prohibited by the County Codes of Montgomery, Prince George's, and Howard Counties only. As noted *supra,* at the time the present actions commenced, § 42(a) provided:

Authorized.—In Montgomery County, Prince George's County, and Howard County, in accordance with this subtitle, a person who is subjected to an act of discrimination prohibited by the county code may bring and maintain a civil action against the person who committed the alleged discriminatory act for damages, injunctive relief, or other civil relief.

§ 42(a). At issue in the present case is whether WSSC properly may be considered a "person" subject to suits brought pursuant to § 42(a).

According to WSSC, it does not qualify as a "person" subject to actions for employment discrimination brought pursuant to § 42(a) and county anti-discrimination ordinances. The Commission maintains that, under well-established rules of construction, the term "person" in a statute ordinarily does not include the State or its agencies and instrumentalities unless the statute provides specifically otherwise. WSSC notes first the obvious, that § 42(a) does not refer specifically to the State as a "person." As such, according to WSSC, the State and its agencies and instrumentalities are not "persons" and, thus, as a State agency, WSSC is not a proper object for an employment discrimination suit under § 42(a). In addition, WSSC maintains that, if the Court were to determine that WSSC is a "unique" agency, rather than a more traditional State agency, it is nevertheless immune from suit under § 42(a) because nothing in § 42(a) suggests that the General Assembly intended for the section to apply to "unique" agencies. Finally, WSSC argues that the application of PGCC § § 2–186 and 2–222 to it through § 42(a) would imbue im-

properly the County Code provisions with extra-territorial effect and render them unconstitutional general laws.[9]

In countering WSSC's contentions, Phillips, Sillers, and Cartwright submit that the term "person," as it is used in § 42(a), includes the State. In urging the Court to adopt their interpretation of § 42(a), they cite certain definitions contained in § 15, which, they maintain, indicate that the General Assembly intended for the term "person" to include the State. Thus, in light of the rule of statutory construction that instructs a court to interpret similar, related statutes in harmony with each other, Phillips, Sillers, and Cartwright contend that the same definition of "person" should apply to § 42(a). Therefore, in their view, because the term "person" in § 42(a) includes the State, WSSC, a State agency or instrumentality, is subject to suits brought pursuant to that provision. In the alternative, they maintain that, even if § 42(a) does not apply to State agencies generally, WSSC's unique characteristics qualify it nevertheless as a "person" under § 42(a).

## ANALYSIS

### A. The Term "Person" in § 42(a) is Ambiguous

We have long recognized that, in general, the term "person" in a statute does not include the State and its agencies and instrumentalities. *Unnamed Physician v. Comm'n on Med. Discipline*, 285 Md. 1, 12, 400 A.2d 396, 402 (1979); *State Comm'n on Human Relations v. Mayor & City Council of Balt.*, 280 Md. 35, 38–39, 371 A.2d 645, 647 (1977); *Harden v. Mass Transit Admin.*, 277 Md. 399, 408, 354 A.2d 817, 822 (1976); *Mayor and City Council of Balt. v. Balt. Gas & Elec. Co.*, 232 Md. 123, 135, 192 A.2d 87, 93–94 (1963);

9. A general law is "one that pertains to two or more geographical subdivisions within the State ... and 'deals with the general public welfare, a subject which is of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state.'" *Tyma*, 369 Md. at 507, 801 A.2d at 154 (quoting *Cole v. Sec'y of State*, 249 Md. 425, 435, 240 A.2d 272, 278 (1968)). A local law, on the other hand, "applies to only one subdivision ... and pertains only to a subject of local import." *Id.*

*Huffman v. State Rds. Comm'n,* 152 Md. 566, 584, 137 A. 358, 365 (1927). We have noted additionally, however, that the State and its agencies and instrumentalities may fall within the purview of the term "person" where such an intention is manifest. *Unnamed Physician,* 285 Md. at 12, 400 A.2d at 402; *Comm'n on Human Relations,* 280 Md. at 39, 371 A.2d at 647; *Harden,* 277 Md. at 408, 354 A.2d at 822; *Balt. Gas & Elec. Co.,* 232 Md. at 135, 192 A.2d at 93–94; *Huffman,* 152 Md. at 584, 137 A. at 365. Whether the State should be considered as encompassed by the term "person" depends upon the "legislative environment" surrounding the use of term "person," and, in reaching a conclusion on the issue, a reviewing court should look to the "subject matter, the context, the legislative history, and the executive interpretation of the statute." *United States v. Coumantaros,* 165 F.Supp. 695, 697 (D.Md.1958).

Section 42(a) attempts no definition of the term "person." As such, under the general rule stated *supra,* the general assumption would be that the State and its agencies and instrumentalities are not subject to suits brought pursuant to § 42(a). We are mindful, however, of another canon of statutory construction, one that directs a reviewing court to interpret statutory provisions that are *in pari materia* (in other words, that deal with the same subject matter) consistently with each other. *Whack v. State,* 338 Md. 665, 673, 659 A.2d 1347, 1350 (1995) ("When we are called upon to interpret two statutes that involve the same subject matter, have a common purpose, and form part of the same system, we read them in *pari materia* and construe them harmoniously."); *Unnamed Physician,* 285 Md. at 10, 400 A.2d at 401; *Police Comm'r v. Dowling,* 281 Md. 412, 418, 379 A.2d 1007, 1011 (1977).

Relying on this canon of statutory interpretation, Phillips, Sillers, and Cartwright direct our attention to the definitions contained in § 15 of Article 49B generally, which, in their view, suggest that the General Assembly intended for the term "person," as it is used in Article 49B, to include the State

and its agencies and instrumentalities. WSSC, on the other hand, contends that the definitions contained in § 15 are inapplicable to § 42(a) because § 15 rests in the subtitle of Article 49B entitled "Discrimination in Employment," whereas § 42(a) is contained within a separate subtitle entitled "Civil Actions–Violations of County Discrimination Laws" and states explicitly that its definitions are "for the purposes of this subtitle." We reject WSSC's contention. Although § 15 is contained within a different subtitle of Article 49B than § 42(a) and states that its definitions are confined to that subtitle, because both § 15 and § 42(a) nonetheless concern specifically discrimination in employment, we find it is appropriate, as part of our duty to construe harmoniously statutes that are *in pari materia*, to refer to the definitions contained in § 15 for guidance in the interpretation of the language used in § 42(a).

Section 15, entitled "Definitions," provides in pertinent part: For purposes of this subtitle:

> (a) Person.—The term "person" includes one or more individuals, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in bankruptcy, or receivers.

§ 15(a).[10] From that definition, it may appear that governmental agencies, such as WSSC, do not qualify as "persons" for purposes of § 42(a). Section 15, however, provides additional definitions that cast doubt on such a final conclusion:

> (b) Employer.—The term *"employer" means a person* engaged in an industry or business who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year,

---

**10.** The definition of "person" previously contained in § 15(a) has been recodified as § 1–101(d) of the State Government Article. In its current form, § 1–101(d) provides:

> Person.—"Person" means an individual, receiver, trustee, guardian, personal representative, fiduciary, or representative of any kind and any partnership, firm, association, corporation, or other entity.

Md.Code, State Gov't Art., § 1–101(d).

and any agent of such a person; *such term does include the State of Maryland* to the extent as may be provided in this article but such term does not include a bona fide private membership club (other than a labor organization) which is exempt from taxation under § 501(c) of the Internal Revenue Code.

\* \* \*

(e) Employee.—The *term "employee" means an individual employed by an employer, except that "employee" does not include any person elected to public office or any person chosen by the officer to be on the officer's personnel staff,* or an appointee in the policymaking level or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office. The *exception set forth in the preceding sentence does not include employees subject to the State or local civil service laws.*

§ 15(b) and (e) (emphasis added).[11]

As we see, the definition of "employer" contained in § 15(b) provides that an "employer" is a "person," and that "such term does include the State of Maryland." § 15(b). As such, two competing interpretations arise: (1) that the State is an "employer," which, in turn, is necessarily a "person," the position urged by Phillips, Sillers, and Cartwright; and, (2) that although an "employer" is a "person" under § 15(b), the use of a semi-colon in the definition suggests that the State is included separately as an "employer," not linked to the definition of "employer" as a "person," the interpretation urged by WSSC. Confronted with both seemingly reasonable interpretations, it appears ambiguous whether the General Assembly intended for the State to be included in the term "person."

Regarding the definition of "employee" contained in § 15(e), we noted, in *Commission on Human Relations*, that, although the definition of "person" in § 15(a) does not explicitly include

---

**11.** Section 15(b) and (c) have been recodified, without substantive change, at § 20–601(d) and (c), respectively, of the State Government Article.

the State and its agencies and instrumentalities, § 15(e) "has the effect of creating an ambiguity in [§ 15] as a whole" with regard to whether the State falls within the class of employers covered by Article 49B and subject to the Commission on Human Relation's investigatory powers. 280 Md. at 41, 371 A.2d at 648. In resolving the ambiguity, we noted that the General Assembly, in adding § 15(e), was attempting to conform Maryland's fair employee practices legislation to its federal counterpart, which included political subdivisions within its coverage. *Id.* at 42, 371 A.2d at 648. In addition, we observed that "the last sentence of [§ 15(e)] has no function or meaning other than as part of a statutory scheme which includes the employees of local subdivisions within its protective ambit." *Id.* In order to further the purpose of the statute and to avoid a construction that would render much of the language of § 15(e) mere surplusage, we held that, "since its employees are protected by Art. 49B, [§ 15(e)], the City of Baltimore is subject to the investigatory authority of the commission in regard to the fair employment practices laws of this State." *Id.* at 43, 371 A.2d at 649.

Although we found in *Commission on Human Relations* that political subdivisions of the State were subject to the provisions of Article 49B permitting the Commission on Human Relations to investigate claims of alleged employment discrimination, our holding in that case fails to establish conclusively that the General Assembly, in enacting § 42(a), intended for the scope of coverage which is applicable to investigations by the Commission on Human Relations to apply similarly to private actions brought in court against political subdivisions. Such a conclusion is buttressed by the fact that one of the significant underpinnings of our holding in *Commission on Human Relations* was the clearly expressed desire of the General Assembly to have § 15 conform to its federal counterpart. That rationale is not apposite, however, to the present cases because § 42(a) has no federal equivalent. As such, in light of the ambiguity remaining in the term "person," as it is used in § 42(a), we turn to an examination of the legislative history of the statute for guidance.

## B. The Legislative History and Purpose of § 42(a)

As observed by the Court of Special Appeals in *Phillips*, § 42(a) had its genesis in a Montgomery County ordinance, namely, Montgomery County Code ("MCC") § 27–20(a),[12] which authorized a private civil cause of action against individuals for employment discrimination occurring within the County.[13] In *McCrory Corp. v. Fowler*, 319 Md. 12, 570 A.2d 834 (1990), we considered whether Montgomery County's enactment of MCC § 27–20(a) exceeded the authority delegated to the County by the Charter Counties' Express Powers Act.[14]

---

12. At the time, MCC § 27–20(a), entitled "Rights of complainant; civil action by county attorney," provided:

Any person who has been subjected to any act of discrimination prohibited under this division shall be deemed to have been denied a civil right and shall be entitled to sue for damages, injunction or other civil relief, including reasonable attorneys fees; . . . .

MCC § 27–20(a) (1984, Supp. 1 & Supp. 6).

13. The Montgomery County Code contained another provision, MCC § 27–21(a), entitled "Procedure for complaints against county," which provided in pertinent part:

In any case in which the county or any of its instrumentalities or agencies is alleged to be in violation of any of the provisions of this division, a complaint may be filed with the commission as hereafter provided or, at the sole discretion of the aggrieved party, directly with a court of competent jurisdiction.

MCC § 27–21(a).

14. The Express Powers Act is codified at Md.Code, Art. 25A, § 5. That section, entitled "Enumeration," provides in pertinent part:

The following enumerated express powers are granted to and conferred upon any county or counties which hereafter form a charter under the provisions of Article XI–A of the Constitution, that is to say:

(A) Local Legislation

(1) To enact local laws for the county, including the power to repeal or amend local laws of the county enacted by the General Assembly upon the matters covered by the express powers in this article.

(2) To provide for the enforcement of all ordinances, resolutions, bylaws and regulations adopted under the authority of this article by fines, penalties and imprisonment, enforceable according to law as may be prescribed. A penalty may not exceed $1,000 for any offense, unless otherwise authorized in this subsection, or provide for imprisonment for more than six months.

(3) To provide for the enforcement of local fair housing laws by fines or penalties that do not exceed the fines or penalties provided

*McCrory,* 319 Md. at 13, 570 A.2d at 834. We found that Montgomery County lacked the authority under the Express Powers Act to enact MCC § 27–20(a) because the provision of a private civil cause of action against individuals for employment discrimination in the County did not qualify as a "local law." *Id.* at 14, 570 A.2d at 834–35. Specifically, we noted that employment discrimination was "a matter of statewide concern" and that the General Assembly had not granted Montgomery County the power to enact MCC § 27–20(a). *Id.* at 20, 570 A.2d at 838. In addition, we observed that the creation of new causes of action in the courts has been accomplished traditionally on a statewide basis either by the General Assembly or by the Court of Appeals. *Id.*

In 1992, responding to our holding in *McCrory,* the General Assembly passed House Bill 722, which created the original version of § 42(a),[15] thereby authorizing explicitly private civil actions for violations of the anti-discrimination provisions of the Montgomery County Code.[16] The Preamble to House Bill 722 left no doubt that the purpose of the measure was to overrule legislatively our decision in *McCrory.* In no uncertain terms, it stated:

---

in the federal Fair Housing Act Amendments of 1988 for enforcement of similar federal fair housing laws.
(4) To provide for the enforcement of local employment discrimination laws or public accommodations discrimination laws by fines or penalties that do not exceed $5,000 for any offense.
(5) To provide for enforcement of all ordinances, resolutions, by-laws, and regulations adopted under the authority of this article by civil fines and penalties.
Md.Code, Art. 25A, § 5 (1957, 2003 Repl. Vol.).

**15.** After the passage of House Bill 722, § 42(a) provided:

In accordance with this subtitle, a person who is subjected to an act of discrimination prohibited by the Montgomery County Code may bring and maintain a civil action against the person who committed the alleged discriminatory act for damages, injunctive relief, or other civil relief.
*See* 1992 Md. Laws 3445–47.

**16.** In 1993, the General Assembly passed House Bill 330, which expanded § 42(a)'s scope to include the anti-discrimination provisions of the Prince George's and Howard County Codes. *See* 1993 Md. Laws 1315–16.

WHEREAS, On March 7, 1990 the Maryland Court of Appeals invalidated Section 27–20(a) of the Montgomery County Code, which was enacted in 1973 and provides for private causes of action for violations of certain County discrimination laws; and

WHEREAS, The Maryland Court of Appeals held in *McCrory Corp. v. Fowler* that the Express Powers Act did not provide adequate authority to create private causes of actions and that the creation of a new private cause of action has traditionally been the province of the General Assembly or the Court of Appeals; and

WHEREAS, The General Assembly believes that it is important to provide full protection of the law to its citizens and that allowing private causes of action for violations of certain county discrimination laws, under certain circumstances, is appropriate; . . . .

1992 Md. Laws 3446.

Of considerable import to the question posed by the present appeals, the "Fiscal Note" concerning House Bill 722, prepared by the Department of Fiscal Services at the time of the bill's consideration to analyze the fiscal impact of the proposed changes on the State and local governments, states:

*State Fiscal Impact Statement: No effect.*

Local Fiscal Impact Statement: Expenditures may be affected as explained below. Revenues are unaffected.

\* \* \*

*State Expenditures: No effect.*

\* \* \*

*Local Expenditures: Local expenditures could be affected to the extent that the county becomes a defendant and incurs litigation and court costs.*

H.B. 722 (1992), Fiscal Note. The language of the Fiscal Note, suggesting that State expenditures would be unaffected by the passage of § 42(a), but that counties might be held liable as defendants in employment discrimination actions brought pur-

suant to the section, makes clear then that the General Assembly intended that causes of action under § 42(a) alleging violations of the anti-discrimination provisions of the Montgomery County Code could not be filed against the State. The Fiscal Note, however, similarly displays the General Assembly's intention that § 42(a) would apply against Montgomery County itself. Based on this clear indication of legislative intent, we hold that the proper construction of the term "person" in § 42(a) excludes generally the State and its agencies and instrumentalities, but includes county and local government entities. Having so held, we turn to determine whether, for purposes of § 42(a), WSSC qualifies as an agency or instrumentality of the State, or whether it is more properly considered a county or local entity for purposes of § 42(a).

### C. Whether WSSC is a State Agency or Instrumentality for Purposes of § 42(a)

Created by the General Assembly in 1918, WSSC is a bi-county entity imbued with jurisdiction over the Washington Suburban Sanitary District. Md.Code, Art. 29, § 1–102(a) (1957, 2003 Repl. Vol.). It is the primary provider of the public water supply and sewerage collection and treatment services for Montgomery and Prince George's Counties. WSSC is a "hybrid" entity, *see Washington Suburban Sanitary Comm'n v. Elgin*, 53 Md.App. 452, 454, 454 A.2d 408, 410 (1983), which defies simple and definitive categorization as either a "State" or "local" agency or instrumentality for any and all purposes.

WSSC possesses certain characteristics indicative of State agency status. For example, WSSC possesses the power of eminent domain, Art. 29, § 1–202(c), and the ability to enter into contracts concerning water supply, sewerage, drainage systems, and waste or wastewater systems that have the full effect of a contract between the District of Columbia and the State of Maryland. Art. 29, § 1–206. In addition, Maryland's Secretary of Budget and Management oversees certain WSSC personnel matters, and, by state statute, increases in employee compensation by WSSC may not exceed increases author-

ized for State employees. Art. 29, § § 1–204 and 11–103. We also have noted that the General Assembly created WSSC by adoption of a public general law, rather than a public local law. *City of Bowie v. Washington Suburban Sanitary Comm'n*, 249 Md. 611, 616, 241 A.2d 396, 399 (1968).

Furthermore, this Court held that WSSC is considered properly a State agency for purposes of determining the applicability of the doctrine of state sovereign immunity, although we also found that the General Assembly waived such immunity for matters within the scope of its responsibilities by allowing WSSC to sue and be sued and to raise revenue to pay judgments. *Katz v. Washington Suburban Sanitary Comm'n*, 284 Md. 503, 509, 515, 397 A.2d 1027, 1031, 1033 (1979). We held that WSSC is a State agency subject to the requirements of the State Administrative Procedures Act. *Donocam Assocs. v. Washington Suburban Sanitary Comm'n*, 302 Md. 501, 510, 489 A.2d 26, 30 (1985). Finally, we held that, as a State agency, WSSC is not subject to the running of statutes of limitations. *Washington Suburban Sanitary Comm'n v. Pride Homes, Inc.*, 291 Md. 537, 537, 435 A.2d 796, 797 (1981) (holding that "limitations do not run against the Washington Suburban Sanitary Commission because it is an agency of the State"). As WSSC points out, a number of other decisions of this Court refer to WSSC, in passing, as a State agency. *See, e.g., Washington Suburban Sanitary Comm'n v. Utilities, Inc.*, 365 Md. 1, 6, 775 A.2d 1178, 1182 (2001) (noting that "WSSC is a state agency, vested with broad authority to construct and operate water supply, sewerage, and storm water management systems in Prince George's and Montgomery Counties"); *Utilities, Inc. v. Washington Suburban Sanitary Comm'n*, 362 Md. 37, 42, 763 A.2d 129, 132 (2000) (stating that "[t]he Commission, an agency of the State . . . is authorized to provide water and sewage service to most of Prince George's County and to Montgomery County, Maryland"); *Quesenberry v. Washington Suburban Sanitary Comm'n*, 311 Md. 417, 424, 535 A.2d 481, 484 (1988) (observing that "WSSC is a state agency, created by the Legislature through a public general law").

Although WSSC contends otherwise, the preceding analysis does not establish conclusively that WSSC is considered properly a State agency for any and all purposes. Rather, an entity may qualify as a State agency for some purposes, while being classified as a local agency for other purposes. *See, e.g., Rucker v. Harford County*, 316 Md. 275, 289–90, 558 A.2d 399, 406 (1989) (noting that, although the Court found sheriffs to be State officials under Maryland law, "for some purposes and in some contexts," a sheriff may be treated as a local government employee); *Clea v. Baltimore*, 312 Md. 662, 670 n. 5, 541 A.2d 1303, 1306 n. 5 (1988) ("We are aware, of course, that the General Assembly's designation of the Baltimore City Police Department as a state agency would not be controlling for all purposes."); *Washington Suburban Sanitary Comm'n v. C.I. Mitchell & Best Co.*, 303 Md. 544, 561, 495 A.2d 30, 38 (1985) (stating that WSSC "is a state agency which is out of the mainstream," but holding nevertheless that WSSC "is not a state agency within the meaning of Art. 81, § 215," a statute authorizing individuals to file claims against State agencies to collect refunds for money "erroneously or mistakenly paid" to the agency, because WSSC's budget "is not included in the state budget submitted by the Governor and approved by the General Assembly").

Despite possessing certain characteristics common to State agencies, WSSC is a unique entity, autonomous in many ways from the constraints and characteristics of most other State agencies. Its scope is entirely local in nature. The Commission is composed of six commissioners, three representing Montgomery County and three representing Prince George's County. Art. 29, § 1–102(b). Each member of WSSC is appointed by the County Executive and confirmed by the County Council of the member's respective County. *Id.* A commissioner may be removed before the completion of his or her term only by action of the respective County Executive and County Council from the County that appointed the commissioner. Art. 29, § 1–104(a). The State plays no apparent role in these appointment or removal processes.

In addition, WSSC possesses a multitude of qualities that distinguish it from traditional State agencies and suggest that the Commission operates similarly to an quasi-independent, local entity, albeit one that spans two counties. Specifically, by statute, WSSC (1) is a "body corporate," vested with the powers to use a common seal, to sue and be sued in its own right, and to perform all other corporate acts, Art. 29, § 1–201(a); (2) may impose taxes on residents within the Sanitary District to raise funds sufficient to satisfy judgments levied against it, Art. 29, § 1–201(b); (3) possesses full authority to purchase or convey real property without State approval, Art. 29, § § 1–202(b) and 1–203; (4) creates its own operating and capital budgets, which are approved by the County Executives and County Councils for Prince George's and Montgomery Counties, Art. 29, § 1–204; (5) controls independently, without State input, nearly all of the Commission's internal personnel management decisions, including establishing an employee merit system, organizing staff into departments or divisions, prescribing the duties and responsibilities of staff members, fixing and adjusting staff compensation and salaries, removing employees for cause or suspending employees for disciplinary purposes, and hiring outside consultants deemed necessary by the Commission, Art. 29, § § 11–101, 11–102, 11–103, 11–109, and 11–110; and (6) has the power to provide independent pension and retirement plans for its employees, Art. 29, § § 11–113 and 11–116. Beyond its statutory independence, it is worth noting that WSSC is represented in litigation matters by its own in-house legal counsel, rather than the State Attorney General's Office. In addition, the General Assembly has designated WSSC as a "local government" for purposes of the Local Government Tort Claims Act ("LGTCA"). Md. Code, Cts. & Jud. Proc. Art., § 5–301(d)(7) (1974, 2006 Repl. Vol., 2009 Supp.).[17]

---

**17.** Although designation as a "local government" for purposes of the LGTCA does not, in and of itself, make WSSC a "local government" for any and all purposes, *see Balt. Police Dep't v. Cherkes,* 140 Md.App. 282, 323, 780 A.2d 410, 434 (2001) ("[T]he fact that an entity is designated a 'local government' for purposes of the LGTCA does not mean that it is a

■ Observing WSSC's considerable level of autonomy from the State and the significant control over WSSC's affairs exercised by its internal management, as well as by the local governments of Montgomery and Prince George's Counties, noted *supra*, the United States District Court for the District of Maryland held that WSSC was properly classified as a "local municipality," rather than a State agency, for purposes of determining its eligibility for the protections of governmental immunity under the Eleventh Amendment to the Federal Constitution. *Bushek v. Washington Suburban Sanitary Comm'n*, 155 F.Supp.2d 478, 480–82 (D.Md.2001). In reaching its conclusion, the federal court placed considerable emphasis on the fact that judgments against WSSC would not be paid by the State treasury, and found that the State's "minor restrictions on WSSC's autonomy are . . . not significant in comparison to WSSC's abilities to govern itself, set its own budget, and litigate separately from State control." *Id.* at 481. Although not controlling on our decision in the present cases, the federal District Court's analysis demonstrates further that an entity considered a State agency for some, even most, purposes may be deemed a County or local agency for some other purposes.[18]

The question then becomes whether, for purposes of causes of action brought pursuant to § 42(a), WSSC is considered properly an agency or instrumentality of the State, or, rather, is a county or other local entity. From the foregoing discussion on the specific attributes of WSSC and case law concern-

---

local government for any other purpose, or that it is transmogrified into a local government and takes on the characteristics of a local government, as if it always had been one."), the General Assembly's decision to classify WSSC as a "local government" under the LGTCA reinforces the position that an entity may be considered a State agency for some purposes, while a county or local entity for other purposes.

**18.** Pointing to *Katz* and its progeny, the federal District Court's opinion acknowledged that one factor in the Eleventh Amendment immunity analysis, namely, how an entity is treated under state law, weighed in favor of finding WSSC to be a State agency. *Bushek*, 155 F.Supp.2d at 481–82. The court, however, also noted that none of the cases it examined elaborated upon the *Katz* analysis. *Id.* at 482 n. 2.

ing WSSC's relative classification, it is clear that WSSC lies somewhere between a State agency and a local body, and has been considered both a State agency and a local entity, depending on the context of the regulatory scheme under examination. In classifying WSSC for purposes of § 42(a), however, we are mindful of our duty to construe remedial statutes, such as § 42(a), broadly in favor of claimants in order "to suppress the evil and advance the remedy," *Haas*, 396 Md. at 495, 914 A.2d at 750–51, and consistent with the intent of the General Assembly. In § 14, entitled "Declaration of policy," the General Assembly stated clearly that the purpose of Article 49B was to eliminate discrimination within the State, providing:

> It is hereby declared to be the policy of the State of Maryland, in the exercise of its police power for the protection of the public safety, public health and general welfare, for the maintenance of business and good government and for the promotion of the State's trade, commerce and manufacturers to assure all persons equal opportunity in receiving employment and in all labor management-union relations regardless of race, color, religion, ancestry or national origin, sex, age, marital status, sexual orientation, or disability unrelated in nature and extent so as to reasonably preclude the performance of the employment, and to that end to prohibit discrimination in employment by any person, group, labor organization, organization or any employer or his agents.

§ 14.[19] In order to further the General Assembly's stated purpose of eliminating discrimination in employment and allowing certain counties to have the anti-discrimination provi-

---

**19.** It is worth noting that, in addition to the General Assembly's stated intent to eliminate generally discrimination in employment in Maryland, WSSC's enabling statute contain an anti-discrimination clause. Specifically, Article 29, § 1–107, entitled "Discrimination prohibited," provides:

> The WSSC may not discriminate against a person on the basis of sex, race, creed, color, age, mental or physical handicap, sexual orientation, or national origin.

Art. 29, § 1–107.

sions of their County Codes enforced through private civil actions against employers operating within their boundaries who engage in employment discrimination, and to construe § 42(a) broadly in favor of claimants, we interpret the term "person," as it is used in § 42(a), to include WSSC as a local entity, because of its unique nature as a "hybrid" entity largely autonomous from State oversight and the nearly exclusive level of control over WSSC and its employment actions exercised by the Commission's internal management and the local governments of Montgomery and Prince George's Counties.[20] As such, WSSC is subject to suits brought pursuant to § 42(a) for violations of the anti-discrimination ordinances contained within the Montgomery and Prince George's County Codes.[21]

---

**20.** It is important to note that, in the decisions of this Court which found WSSC to be a State agency for purposes of state sovereign immunity, the State Administrative Procedures Act, and the running of statutes of limitations, we were confronted with the task of interpreting statutes that, unlike § 42(a), were not of a remedial nature.

**21.** WSSC maintains that, if it is considered a "person" under § 42(a) subject to causes of action for violations of county anti-discrimination ordinances, such as PGCC §§ 2–186 and 2–222, the county ordinances will be rendered unconstitutional "general laws" because they will have an improper extra-territorial effect. *See Holiday Universal, Inc. v. Montgomery County*, 377 Md. 305, 317–19, 833 A.2d 518, 525–27 (2003) (invalidating as an unconstitutional general law a Montgomery County consumer protection ordinance which, in the Court's view, could have a "major impact on services performed for people in the rest of the State, or even the rest of the world, based simply on a contract having been signed in Montgomery County"). According to this argument, because WSSC has the statutory ability to levy additional *ad valorem* taxes on citizens of Montgomery County in order to pay judgments levied against it for violations of the Prince George's County Code, enforcement of any judgments in the present cases could "conceivably impact" improperly property tax assessments in Montgomery County. Such an argument is unavailing, however. Any improper extra-territorial effect that WSSC complains of would not result from the provisions of the Prince George's County Code, which regulate only discrimination occurring within the County by employers with a significant presence in the County. Rather, such "unconstitutional" action would be self-created by WSSC's decision to levy such a tax on citizens of Montgomery County (which, as WSSC admitted at oral argument, it has never done). In addition, it is clear that any potential "impact" on citizens of Montgomery County would come as the result of § 42(a), the state

## CONCLUSION

Based on the WSSC's unique "hybrid" characteristics, namely, its considerable autonomy from the State and the significant level of control exercised over its employment actions by internal WSSC management and over the WSSC itself by the local governments of Prince George's and Montgomery Counties, the General Assembly's clearly stated intent to subject county governments to suits under § 42(a), and our duty to construe remedial statutes in favor of claimants, we hold that WSSC is considered properly a "person" for purposes of actions brought pursuant to § 42(a). As such, we affirm, albeit on somewhat different grounds, the judgment of the Court of Special Appeals in *Phillips*, which held that WSSC is a "person" subject to actions brought pursuant to § 42(a), and we reverse the judgments of the trial court in *Sillers* and *Cartwright*, which determined that WSSC was a State agency not qualifying as a "person" under § 42(a).

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IN NO. 85 AFFIRMED; COSTS TO BE PAID BY PETITIONER WSSC. JUDGMENTS OF THE CIRCUIT COURT**

---

statute creating the cause of action, rather than the provisions of the Prince George's County Code, which serve only to identify the type of discrimination prohibited under County law. *See generally, Edwards Sys. Tech. v. Corbin*, 379 Md. 278, 294–300, 841 A.2d 845, 854–58 (2004) (upholding the constitutionality of the combined operation of § 42(a) and PGCC §§ 2–186(a)(3) and 2–222 with regard to discrimination occurring within the County by an employer with a significant presence in the County, and noting that a charter county ordinance limited to prohibiting discrimination in the county is a "local law" authorized by the Express Powers Act).

In addition, WSSC argues that the provisions of the Prince George's County Code, namely, §§ 2–186 and 2–222, allegedly violated by it were not intended to govern discrimination by State agencies. Because we have determined that WSSC is a local entity for purposes of § 42(a) and the county anti-discrimination ordinances, we need not consider its contentions in this regard. Assuming, however, that WSSC were to adjust its argument and maintain that the County Code provisions were not intended to apply to any governmental entities, even those qualifying as "persons" under § 42(a), we note that the County Code bars race-based discrimination in the County by an "employer," defined by the County Code to include Prince George's County government. PGCC § 2–186(a)(5).

**638**

FOR PRINCE GEORGE'S COUNTY IN NO. 154 RE-VERSED; CASES REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS NOT INCON-SISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE WSSC.